1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUEL CARDENAS, | ) | 1:09-cv-01793 LJO MJS HC |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING RESPONDENT'S MOTION |
| v. | ) | TO DISMISS PETITION |
| | ) | |
| NEIL ADLER, Warden, | ) | (Doc. 15) |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

16  I.    **INTRODUCTION**

17        Plaintiff is a federal prisoner proceeding with a Petition for Writ of Habeas Corpus

18  pursuant to 28 U.S.C. § 2241. The matter has been referred to the Magistrate Judge pursuant

19  to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is

20  Respondent's Motion to Dismiss filed on February 17, 2011. (Mot. to Dismiss, ECF No. 15.)

21        The instant Petition for Writ of Habeas Corpus was filed on October 13, 2009. (Pet.,

22  ECF No. 1.) The petition challenges the findings of a 2009 prison disciplinary hearing where

23  Petitioner was found guilty of insolence toward a staff member. (Id. at 12.) In response,

24  Respondent filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure

25  12(b)(6), contending that Petitioner had failed to state a claim upon which habeas relief could

26  be granted. (Mot. to Dismiss.) On March 16, 2010, Petitioner filed a Traverse to the Motion to

27  Dismiss. (Traverse, ECF No. 16.)

28  ///

1  **I.      FACTUAL SUMMARY**

2          On May 21, 2009, Petitioner received an incident report for a violation of code 312.

3  (Mot. to Dismiss, Ex. A.) Prohibited Act Code section 312, set forth in 28 C.F.R. § 541.13, is

4  referred to as "Insolence toward a staff member" and denominated as a "moderate offense."

5  (No further explanation of the charge itself appears in section 541.13.) On May 27, 2009,

6  Petitioner was advised of his rights and signed a  form acknowledging same. (Id.)

7          On June 18, 2009, the disciplinary hearing was held. (Id.) The Disciplinary Hearing

8  Officer ("DHO") was presented evidence in the form of an incident report from correctional

9  officer Campbell. The officer stated in the report that the officer ordered two inmates who were

10 walking on the dirt to walk on the concrete. The officer heard Petitioner say "pinche madre"

11 and spit on the ground.[1] When confronted by the officer, he denied making the statement.

12         At the disciplinary hearing, Petitioner did not deny making the statement. Instead

13 Petitioner asserted that he was talking about a soccer game, and did not direct the comment

14 towards the officer. (Id.) Based on Petitioner's contradictory statements, the DHO found

15 Petitioner not credible and that the greater weight of evidence supported finding Petitioner

16 guilty of the offense. The DHO sanctioned Petitioner with thirteen days disallowance of good

17 conduct time and twenty-one days of disciplinary segregation. (Id.)

18         In his petition, Petitioner raises three claims. First, he asserts that the disciplinary

19 finding violated his constitutional right to freedom of speech. Second, he asserts that the

20 correctional officers lacked appropriate training. Finally, he asserts that Respondent violated

21 his due process rights.

22 **II.     JURISDICTION**

23         **A.      Subject Matter Jurisdiction**

24         Relief by way of a writ of habeas corpus extends to a prisoner in custody under the

25 authority of the United States who shows that the custody violates the Constitution, laws, or

26 treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who

27 challenges the validity or constitutionality of his conviction must file a petition for writ of habeas

28

---

[1]According to the notes of the incident report, "pinche madre" can mean "mother fucker" Spanish.

corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner asserts that, as a result of an adverse ruling in the 2009 prison disciplinary proceeding, he suffered violations of rights guaranteed by the United States Constitution. On June 24, 2009, a DHO found that Petitioner had committed the prohibited act of insolence toward a staff member. (Mot. to Dismiss, Ex. A.) The disciplinary report was delivered to Petitioner on June 26, 2009. (Id.) As a result of the hearing, Respondent sanctioned Petitioner with thirteen days disallowance of good conduct time and twenty-one days of disciplinary segregation. (Id.)

"Habeas corpus jurisdiction is available under 28 U.S.C. section 2241 for a prisoner's claims that he has been denied good time credits without due process of law." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973)). Accordingly, the Court concludes that it has subject matter jurisdiction over the petition.

## B.   Jurisdiction Over the Person

Title 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established. Ahrens v. Clark, 335 U.S. 188, 193, 68 S. Ct. 1443, 92 L. Ed. 1898 (1948), overruled on other grounds in Braden, 410 U.S. at 493,

1   citing Mitsuye Endo, 323 U.S. 283, 305 (1944); Francis v. Rison, 894 F.2d 353, 354 (9th Cir.

2   1990). A failure to name and serve the custodian deprives the Court of personal jurisdiction.

3   Johnson v. Reilly, 349 F.3d 1149, 1153 (9th Cir. 2003).

4   Here, at all pertinent times, Petitioner was incarcerated at the Taft Correctional

5   Institution (TCI), which is located within the Eastern District of California. Petitioner named Neil

6   H. Adler, the Warden of TCI, as Respondent.

7   Accordingly, the Court concludes that it has personal jurisdiction over the custodian.

8   **III.   PROCEDURAL GROUNDS FOR MOTION TO DISMISS**

9   Respondent has filed a motion to dismiss the petition for failure to state a claim upon

10  which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). (Mot. to Dismiss, ECF No.

11  15.) Along with the motion, Respondent has submitted several exhibits. (Mot. to Dismiss.)

12  Reading Respondent's arguments and submitted exhibits, it is clear that Respondent is, in

13  essence, arguing the merits of Petitioner's claims, not a procedural deficiency such as lack of

14  exhaustion or federal jurisdiction.

15  Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

16  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is

17  not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254

18  Cases.[2] The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an

19  answer if the motion attacks the pleadings for failing to exhaust state remedies or being in

20  violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

21  Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

22  remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

23  grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp.

24  1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss

25  after the Court orders a response, and the Court should use Rule 4 standards to review the

26  motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

27

28  [2]The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See, Rule 1 of the Rules Governing Section 2254 Cases; Fed. R. Civ. P 81(a)(4).

1    As discussed above, the Rules Governing Section 2254 Cases do not expressly provide

2   for motion practice; rather, such motion practice must be inferred from the structure of the

3   rules themselves. Hillery, 533 F.Supp. at 1195. For example, Rule 12 provides as follows:

4        The Federal Rules of Civil Procedure, to the extent that they are not inconsistent
         with any statutory provisions or these rules, may be applied to a proceeding
5        under these rules.

6   Rule 12 of the Rules Governing Section 2254 Cases. Because of the peculiar and unique

7   nature of habeas proceedings, as a general rule, neither motions to dismiss under Federal

8   Rule of Civil Procedure 12(b)(6) nor summary judgment motions under Rule 56 are particularly

9   appropriate. Given the nature of a habeas corpus petition, Anderson v. Butler, 886 F.2d 111,

10  113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary

11  appeal); O'Neal v. McAninch, 513 U.S. 432, 442 (1995) (federal court's function in habeas

12  corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)), motions

13  for summary judgment are unnecessary because petitions may be decided immediately by the

14  Court following submission of the pleadings provided no material issues of fact exist.

15   Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition

16  does not comfortably fit within the habeas landscape either. As mentioned, the district court

17  is already tasked with the responsibility to initially screen the petition for sufficiency pursuant

18  to Rule 4 of the Rules Governing Section 2254 cases. Here, the Court's order requiring

19  Respondent to file a response was issued only after the Court had undertaken its Rule 4

20  obligation. Thus, at that point, the Court had, by implication, already found the petition's

21  pleadings sufficient to proceed. Premising a motion to dismiss on Rule 12(b)(6), as

22  Respondent has done, is therefore redundant in that it essentially requests that the Court to

23  conduct a pleading examination already completed.

24   Thus, although procedurally inappropriate, the Court is of the opinion that denying

25  Respondent's motion to dismiss solely on narrow procedural grounds and then requiring an

26  answer that would, in all likelihood, raise the same issue again based on the same evidence,

27  would be an inefficient use of the parties' time as well as the Court's resources. Instead, the

28  Court has the inherent power under the Rules Governing Section 2254 Cases to construe

Respondent's motion as an answer on the merits. So construing the filing, the Court would then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach is entirely consistent with the Rules Governing Section 2254 Cases. Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a full hearing. Hillery, 533 F.Supp. at 1196. However, the drafters of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate process, through the device of an expanded record under Rule 7 might be advantageous. Id. "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing…Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.

In conclusion, the Court shall consider the present motion as an answer, and determine the rights of the parties accordingly.

## IV.    ANALYSIS OF CLAIMS

### A.    First Amendment

Petitioner argues that the imposition of discipline for making the remark violates his First Amendment rights. (Pet. at 4.)

"[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context … some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." Shaw v. Murphy, 532 U.S. 223, 229 (2001) (citation omitted). Furthermore, "because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems …," the Supreme Court generally has "deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." Id. (citation omitted)

In Turner v. Safley, 482 U.S. 78 (1987), the Court adopted a unitary, deferential standard for reviewing prisoners' constitutional claims. Shaw, 532 U.S. at 229. "[W]hen a

1  prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

2  reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Under this

3  standard, four factors are relevant in determining the reasonableness of the regulation at

4  issue. See id. at 89-90. First, there must be a valid, rational connection between the prison

5  regulation and the legitimate governmental interest put forward to justify it. Id. at 89. Second,

6  the court must consider whether there are alternative means of exercising the right that remain

7  open to prison inmates. See id. at 90. Third, the court must also consider the impact

8  accommodation of the asserted constitutional right will have on guards and other inmates and

9  on the allocation of prison resources generally. Id. Fourth, the absence of ready alternatives

10  is evidence of the reasonableness of a prison regulation. Id.

11  The regulation at issue in the instant case prohibits "insolence to a staff member." 28

12  C.F.R. § 541.13, Prohibited Act Code section 312. Applying the four factors described above

13  to the instant case, it is clear that a regulation prohibiting insolence to a staff member has a

14  valid, rational connection to the state's legitimate interest in the safe and orderly operation of

15  its prisons. See Curry v. Hall, 839 F.Supp. 1437, 1441 (D. Or. 1993) ("The government has

16  an unmistakable interest in preserving safety and order in the prison system."). An alternative

17  means of exercising the right to voice dissatisfaction with the conduct of a correctional officer

18  is to file a complaint regarding conditions of confinement so long as the complaint does not

19  contain threats or verbal abuse. The impact of allowing inmates to act in a disrespectful

20  manner towards correctional officers creates potential safety concerns if prisoners do not view

21  officers as being in positions of authority over the inmate population. Lastly, there is no ready

22  alternative to the regulation. Thus, the Court finds that the regulation at issue is valid.

23  To the extent that Petitioner may contend that the regulation is valid but that its

24  application on the facts of this case resulted in the violation of his First Amendment rights, the

25  Court rejects this argument. A prisoner has no right to address prison officials in a

26  disrespectful or abusive manner. Scarpa v. Ponte, 638 F. Supp. 1019, 1028 (D. Mass. 1986).

27  Neither the prison regulation nor its application to Petitioner violate his First Amendment rights.

28  See Lerma v. Fed. Bureau of Prisons, 2003 U.S. Dist. LEXIS 26522, *14-18 (N.D. Tex., Sept.

1   12, 2003). Accordingly, Petitioner's claim for relief on this ground should be rejected.

2   **B.   <u>Officers Lacked Training</u>**

3   Petitioner asserts that correctional officers lacked training and understanding of

4   Spanish. (Traverse at 5-6.)  Here, Petitioner claims that the failure to train the officer who

5   overheard Petitioner make the comment in Spanish mistakenly caused Petitioner to be

6   charged with the present disciplinary infraction and receive the resulting punishment in error.

7   In support, Petitioner alleges that a claim for failure to train or supervise can be established

8   by showing three factors: official is liable under section 1983 for a failure to train only where

9   the plaintiff establishes that: "(1) the [official] failed to train or supervise the officers involved;

10  (2) there is a causal connection between the alleged failure to supervise or train and the

11  alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted

12  deliberate indifference to the plaintiff's constitutional rights." <u>See</u> <u>Burge v. St. Tammany</u>

13  <u>Parish</u>, 336 F.3d 363, 370 (5th Cir. La. 2003). However, the factors listed above are not

14  relevant to the present proceeding. Petitioner has not brought a civil rights claim in the present

15  petition. Instead, Petitioner is challenging the finding of the disciplinary violation based on

16  habeas corpus. The officer's alleged lack of training is not a basis to grant habeas relief. As

17  described in the subsequent section, Petitioner is entitled to certain procedural safeguards,

18  however, the officer's lack of training, by itself, is not a basis for habeas relief.

19  **C.   <u>Violation of Petitioner's Due Process Rights.</u>**

20  The law concerning a prisoner's Fourteenth Amendment liberty interest in good time

21  credit is set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). While the United States

22  Constitution does not guarantee good time credit, an inmate has a liberty interest in good time

23  credit when a state statute provides such a right and delineates that it is not to be taken away

24  except for serious misconduct. <u>See</u> <u>id.</u> at 557 ("It is true that the Constitution itself does not

25  guarantee good-time credit for satisfactory behavior while in prison. But here the State itself

26  has not only provided a statutory right to good time but also specifies that it is to be forfeited

27  only for serious misbehavior."); <u>id.</u> ("[T]he State having created the right to good time and itself

28  recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's

1    interest has real substance …."); id. at 558 (holding that "[s]ince prisoners in Nebraska can

2    only lose good-time credits if they are guilty of serious misconduct, the determination of

3    whether such behavior has occurred becomes critical, and the minimum requirements of

4    procedural due process appropriate for the circumstances must be observed").

5        Prisoners cannot be entirely deprived of their constitutional rights, but their rights may

6    be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at

7    539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not

8    afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due

9    process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v.

10   Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445,

11   454-455 (1984).

12       When a prison disciplinary proceeding may result in the loss of good time credits, due

13   process requires that the prisoner receive: (1) advance written notice of at least 24 hours of

14   the disciplinary charges; (2) an opportunity, when consistent with institutional safety and

15   correctional goals, to call witnesses and present documentary evidence in his defense; and

16   (3) a written statement by the fact-finder of the evidence relied on and the reasons for the

17   disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

18       In addition, due process requires that the decision be supported by "some evidence."

19   Hill, 472 U.S. at 455, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273

20   U.S. 103, 106 (1927). In Hill, the United States Supreme Court explained that this standard

21   is met if "there was some evidence from which the conclusion of the administrative tribunal

22   could be deduced . . ." Id. "Ascertaining whether this standard is satisfied does not require an

23   examination of the entire record, independent assessment of the credibility of witnesses, or

24   weighing of the evidence." Hill, 472 U.S. at 456. Instead, "the relevant question is whether

25   there is any evidence in the record that could support the conclusion reached by the

26   disciplinary board." Id. at 455-456. The Court justified this lesser standard as follows:

27           We decline to adopt a more stringent evidentiary standard as a
        constitutional requirement. Prison disciplinary proceedings take place in a highly
28      charged atmosphere, and prison administrators must often act swiftly on the
        basis of evidence that might be insufficient in less exigent circumstances. The

1   fundamental fairness guaranteed by the Due Process Clause does not require
2   the courts to set aside decisions of prison administrators that have some basis
    in fact. Revocation of good time credits is not comparable to a criminal
3   conviction, and neither the amount of evidence necessary to support such a
    conviction, nor any other standard greater than some evidence applies in this
    context.

4

5   Id. at 456. (Citations omitted.)

6      "The Federal Constitution does not require evidence that logically precludes any

7   conclusion but the one reached by the disciplinary board." Hill at 457. Even where, as in Hill,

8   the evidence in the case "might be characterized as meager," if "the record is not so devoid

9   of evidence that the findings of the disciplinary board were without support or otherwise

10  arbitrary," those findings must be upheld. Id. Thus, if the procedures listed above are afforded

11  to an inmate, and "some evidence" supports the hearing officer's decision, the requirements

12  of due process are satisfied. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269-1270.

13     The evidence presented at the disciplinary hearing and relied upon by the DHO

14  included an incident report filed by Officer S. Campbell on May 21, 2009. (Mot. to Dismiss, ex.

15  A). According to the report, the officer heard Petitioner call him a 'pinche madre' after he

16  instructed Petitioner to walk on the concrete rather than the dirt. The officer confronted

17  Petitioner and he denied that he made the statement. (Id.) According to the investigation

18  paperwork, Petitioner was provided a copy of the incident report and advised of his rights (Id.)

19     On June 18, 2009, the disciplinary hearing was held. (Mot. to Dismiss, ex. A.) Petitioner

20  appeared at the hearing and denied the charge, and stated that he was "talking about the

21  soccer game." (Id.) On June 24, 2009, the DHO issued a written decision, which was served

22  on Petitioner on June 26, 2009. (Id.) After reviewing all of the evidence, the DHO found

23  Petitioner guilty of committing the prohibited act. The finding was based on the information

24  submitted by the correctional officer and Petitioner's statements. (Id.) Given the contradictions

25  in Petitioner's statements, the DHO found Petitioner's statements less credible.

26     The Court finds that "some evidence" exists to support a finding that Petitioner had

27  committed the prohibited act of insolence toward a staff member. The DHO's decision turned

28  on whether he or she believed the testimony of Petitioner or the correctional officer.

U.S. District Court
E. D. California

Furthermore, while Petitioner claims the officer was not properly trained to speak Spanish, he does not claim that the officer misunderstood what he said or that the phrase was not derogatory in nature. The DHO found Petitioner lacked credibility, and thus accepted the correctional officer's version of the facts. Under such circumstances, the "some evidence" standard has been met. See Hill, 472 U.S. at 455. While the evidence was not overwhelming, the DHO's determination "was not so lacking in evidentiary support as to violate due process." Id. at 457. The fact that Petitioner's statements of innocence were also introduced into the record does not alter the conclusion that the DHO's decision was supported by "some evidence." Accordingly, Petitioner's third claim lacks merit.[3]

## V.      RECOMMENDATION

For the reasons discussed herein, the Court RECOMMENDS that Respondent's Motion to Dismiss be GRANTED and the petition be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within seven (7) days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    July 13, 2011                        /s/ Michael J. Seng
                                               UNITED STATES MAGISTRATE JUDGE

_____

[3] Respondent also asserts that Petitioner failed to exhaust administrative remedies with regard to this claim. As Petitioner's third claim lacks merit, the Court need not address whether the claim was exhausted.